UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY LEE ,

       Plaintiff,                            Civil Action No. 06-10983

v.                                     HON.  VICTORIA A. ROBERTS
                                          U.S. District Judge
                                          HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Anthony Lee  brings this action under 42 U.S.C. §405(g) challenging a final

decision of Defendant Commissioner denying his applications for  Disability Insurance

Benefits ("DIB")  under the Social Security Act.  Both parties have filed summary judgment

motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for

Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be

DENIED.

## PROCEDURAL HISTORY

      On September 12, 2001, Plaintiff filed an application for DIB,  alleging an onset of

disability date of March 23, 2001 (Tr. 39-41).  After the initial denial of his claim, Plaintiff

filed a timely request for an administrative hearing, conducted on March 11, 2005 in Flint,

-1-

Michigan before Administrative Law Judge (ALJ) Regina Sobrino.  Plaintiff, represented by attorney Mikel Lupisella, testified. (Tr.  317-330).   Timothy Shaner, acting as Vocational Expert (VE) also testified (Tr. 330-337).   ALJ Sobrino found that although Plaintiff was unable to perform any of his past work, he retained the capacity to  perform a significant number of jobs in the national economy at the light exertional level (Tr. 21).   On December 30, 2003, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on March 7, 2006.

## BACKGROUND FACTS

Plaintiff, born July 3, 1955, was 49 when the ALJ issued her decision  (Tr. 20).  He completed high school and one year of college (Tr. 60).  Plaintiff worked previously as an automotive worker (Tr. 55).  He alleges that neck and back problems due to an automotive accident prevent him from working (Tr. 54).

### A.     Plaintiff's Testimony

Plaintiff testified that he lived alone in a one-story house in Flint, Michigan (Tr. 317). Plaintiff, 49, reported that since he became disabled on March, 23, 2001, he attempted to resume work but was prevented by neck and back pain (Tr. 318).  He admitted that despite his limitations he continued to coach high school basketball until February, 2005 (Tr. 319-320).  He estimated that he could stand for 30 to 90 minutes before experiencing discomfort; walk for 45; and sit for up to 180 minutes (Tr. 320).  He indicated that he could lift between 10 and 15 pounds (Tr. 321).  He reported difficulty performing desk work due to neck pain, as well as problems reaching overhead; bending; and climbing and descending stairs (Tr.

321).

Plaintiff admitted that he continued to grocery shop, prepare simple meals, and perform light household chores (Tr. 322-323).  He indicated that he socialized with family members and played cards once or twice a month (Tr. 322, 328).  He reported taking medicine for both back pain and inflamation, adding that he experienced the side effects of dizziness, nausea, and drowsiness (Tr. 324).  He reported additionally that despite treatment for sleep apnea, he regularly experienced sleep interruption due to back and neck pain (Tr. 329).  He stated that on "bad days," pain and fatigue obliged him to nap three or four times (Tr. 329).

Plaintiff testified that he was in automotive accidents in March and October of 2001 (Tr. 325).  He indicated that his back condition, brought on by the March accident, was exacerbated by the second accident in October (Tr. 325).

### B.   Medical Evidence

### i. Treating Sources

One month after Plaintiff's March, 2001 automotive accident, physical therapy notes show that he continued to experience spine and neck pain, as well as headaches and blurred vision (Tr. 99).  John M. Commet, D.O. prescribed Voltaren and Skelaxin (Tr. 134).  May and June, 2001 notes indicate that Plaintiff experienced only "minimal relief" despite receiving cortisone injections (Tr. 97-98).  Imaging studies from October, 2001 show severe disc space narrowing at the L5-S1 level,  with evidence of vacuum disc phenomenon, along with "a Grade I spondylolisthesis of L5 on S1."   The same month, Dr. Commet examined

-3-

Plaintiff, noting that he reported lumbar back pain as a result of automobile accident on October 19, 2001 (Tr. 115).

A physical therapist's notes from the same period indicate that Plaintiff was disinclined "to rush back into anything," noting that Plaintiff received wage replacement through his insurance company and had sued the driver who hit him in the March, 2001 accident (Tr 174). The same therapist reported to Dr. Commet that Plaintiff "did not demonstrate any significant functional limitations during occupational therapy evaluation," and further, "demonstrated some embellishment behaviors during lifting tolerance testing" (Tr. 173). December, 2001 physical therapy notes indicate that Plaintiff worked within the "light-medium" category of physical demand (Tr. 168). A therapy discharge report created later the same month stated that Plaintiff was capable of working at the medium level of physical demand (Tr. 166). Also in December, 2001, Commet re-prescribed Vioxx and Skelaxin (Tr. 114).

In January, 2002, Plaintiff reported continued dizziness, nausea, and tinnitus to Dr. Commet (Tr. 113). In March, 2002, physical therapist ("PT") Meghan Lennox conducted a cervical and lumbar back assessment opining that "[Plaintiff's] representation of his disability is grossly in excess of that expected on the basis of the physical examination" (Tr. 146). The same month, Neurosurgeon Mokbel Chedid, M.D. examined Plaintiff, noting cervical degenerative disc disease, possible carpal tunnel syndrome ("CTS") and "[p]ossible lumbar spondylosis (Tr. 205). Dr. Chedid commented that he did not observe "any big ruptured discs or degeneration" (Tr. 205). He advised continued conservative care (Tr. 206).

During the same period, Syed Sattar, M.D. noted that Plaintiff's recent attempt to resume work had been unsuccessful (Tr. 218).  Sattar advised Plaintiff to remain off work for four to six weeks, renewing his prescriptions for Celebrex, Skelaxin, and Darvocet  (Tr. 218).

In May, 2002, Plaintiff reported to Chedid that injections did not relieve his neck and back pain (Tr. 199).   In October, 2002, Plaintiff indicated that although his condition was unchanged, he was disinclined to consider surgery (Tr. 194).  The same month, an MRI of his cervical spine showed a "[s]light increase in degree of spondylosis" (Tr. 192).

In May, 2002, Sattar noted that Plaintiff experienced worsening neck pain and headaches, again advising him to stay off work (Tr. 216).  In August, 2002, a sleep study showed "moderate to severe obstructive sleep apnea and hypopnea" (Tr. 213).   Fahim Khorfan, M.D. prescribed CPAP titration (Tr. 211).   Dr. Sattar again advised Plaintiff to refrain from working in July, 2003 (Tr. 207).

In February, 2002,  Nasser Sabbagh, M.D. noted that EMG studies showed normal results (Tr. 243).   In July, 2002, Dr. Sabbagh opined that Plaintiff's pain was "musculoskeletal in nature," suggesting that Plaintiff "possibly exaggerated" his symptoms (Tr. 242).  An EEG performed the same month showed normal results (Tr. 239).  Plaintiff received a prescription for Zoloft (Tr. 242).  In September, 2002 Sabbagh observed that Plaintiff was capable of returning to work "from a neurological point of view," but extended his sick leave for another month on the basis of depression (Tr. 236).  In November, 2002 Sabbagh opined that Plaintiff could resume work with restrictions (Tr. 235).

A February, 2004 MRI of the lumbar spine showed "bilateral spondyloysis with

-5-

spondylolsthesis of L5 on L1" (Tr. 308).   An MRI of the cervical spine performed the same

month showed normal results  (Tr. 307).  In November, 2003, Plaintiff told Dr. Sattar that

he had been involved in a recent automobile accident, reporting pain in the left shoulder and

right arm[1] (Tr. 303).    In January, 2004, Plaintiff indicated that he experienced fewer

headaches and a reduction in pain (Tr. 302).  In September, 2004, Sattar noted that although

Plaintiff continued to experience pain that his condition was stabilized with medications (Tr.

297).  In January, 2005, Sattar commented that Plaintiff was able to "function with the

medications," although he continued to experience occasional exacerbations of pain (Tr.

294).

### ii.  A Consultive Source

A January, 2003 Residual Functional Capacity Assessment found that Plaintiff

retained the ability to lift 20 pounds occasionally; 10 pounds frequently; stand, walk, or sit

for six hours in an eight-hour workday; and unlimited abilities to push and pull  (Tr. 179).

The report found further that Plaintiff was limited to frequent (rather than constant)

balancing; occasional climbing of ramps or stairs; stooping, kneeling, crouching, and

crawling; and was completely precluded from ladder, rope, or scaffold climbing (Tr. 180).

The report noted the absence of manipulative limitations with the exception for an inability

to reach overhead on a constant basis (Tr. 181).

### C.    Vocational Expert Testimony

---

[1]As noted previously, Plaintiff reported March and October, 2001 automobile  as well as the more recent one cited above.

VE Timothy Shaner, stating his testimony was consistent with the information provided in the Dictionary of Occupational Titles, classified Plaintiff's former work as an inspector as unskilled at the sedentary level of exertion (Tr. 84, 331, 333). VE ALJ Sobrino posed the following question to the VE:

"I want you to assume someone who has [Plaintiff's] work background. And I want you to assume this individual was born in 1955. The individual has a 12th grade education. I want you to assume a person who is limited to lifting, carrying, pushing, and pulling no more than ten pounds frequently or 20 occasionally. Assume a person who's able to stand and walk about six hours in an eight-hour workday and sit up to eight hours in an eight-hour worday with typical breaks and a lunch period. This person should not climb ladders, ropes or scaffolds. Should not be required to crawl. Can occasionally climb stairs, occasionally stoop, occasionally crouch. Assume that the person should not do overhead reaching, should not be exposed to hazards. The person should not be required to operate foot or leg controls. The person is limited to performing work that involves no more than occasionally flexing, extending, or rotating the neck. The person should not perform work that requires twisting movements of the back. Assume that the person is limited to performing work that is simple and routine. Could a person with these limitations perform Mr. Lee's past work?"

The VE replied that given the above limitations, such an individual could perform his past work, but if given the additional limitation that the individual should "be able to keep his (sic) elbows close to his (sic) sides while working," the VE found the hypothetical individual would be unable to perform Plaintiff's past relevant work (Tr. 332). However, the VE stated that such a person could perform the sedentary work of a surveillance system monitor (1,600 jobs in the regional economy), information clerk (1,800), and reception clerk (6,500). At the light exertional level, the VE testified to the existence of 1,800 information clerk and 3,000 gate guard jobs (Tr. 333). In response to the attorney's questioning, the VE

-7-

acknowledged that if such an individual were obliged to nap for two to three times a day, all gainful employment would be precluded (Tr. 333). The VE concluded by stating that if the hypothetical individual were limited to lifting a maximum of 15 pounds that the number of information clerk positions would be reduced by 50 percent[2] (Tr. 334).

### D.   The ALJ's Decision

Citing Plaintiff's medical records, ALJ Sobrino found that Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and osteoarthritis (Tr. 19). Nonetheless, she determined that although Plaintiff had a severe impairment or combination of impairments, none met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 19 ).

She found that while Plaintiff was unable to perform any past relevant work, he retained the residual functional capacity ("RFC"):

> "To lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally. The claimant can stand/walk 6 hours in an 8-hour work day and sit up to 8 hours per 8-hour work day. The claimant should not climb ladders, ropes or scaffolds. He can climb stairs occasionally, stoop occasionally, and crouch occasionally but should not crawl. He should not do overhead reaching, or perform work that involves more than occasional flexion, extension or rotation of the neck. He should not be exposed to hazards or be required to operate foot or leg controls. He should not engage in twisting movements of the back. He should be able to keep his elbows close to his sides while working. Because of the alleged side effects of medication, he is limited to performing simple, routine work"

(Tr. 18, 20).

_____

[2]On Transcript page 333, the VE refers to this position as "information clerk;" on 334, he identifies the same position as "order clerk."

-8-

Stating that although Plaintiff's additional limitations do not allow him to perform the full range of light work, ALJ Sobrino found that he retained the RFC to perform a significant number of light jobs in the regional and national economy, adopting the VE's job finding that Plaintiff could perform the jobs of information clerk, gate guard, and order clerk (Tr. 20).

The ALJ noted that Plaintiff's "allegations of disabling symptoms [were] not fully consistent with the objective medical and other evidence of record," citing August, 2004 treating notes indicating that his condition had stabilized (Tr. 17). She supported her credibility determination further by noting that Plaintiff continued to shop, drive, and attend concerts (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health*

& *Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Hypothetical Limitations

Plaintiff argues that the ALJ erroneously disregarded Dr. Commet's January, 2002

-10-

opinion that he could lift a maximum of five pounds. *Plaintiff's Motion,* at 6-8. Citing

*Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987),

Plaintiff contends that the hypothetical question's omission of Commet's lifting restrictions

taints the ultimate non-disability finding. On a related note, Plaintiff submits that the ALJ

did not provide adequate reasons for rejecting Dr. Comment's findings. *Motion* at 6-8.

   *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987),

sets forth the Sixth Circuit's requirements for a hypothetical question. "Substantial evidence

may be produced through reliance on the testimony of a vocational expert in response to a

hypothetical question, but only if the question accurately portrays [the] plaintiff's individual

physical and mental impairments." (internal citations omitted). *Id.* at 9. *See also Webb v.*

*Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). The hypothetical question

must be supported by record evidence. However, "the ALJ is not obliged to incorporate

unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human*

*Services,* 39 F.3d 115,118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health &*

*Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

   Plaintiff's argument for remand, premised on the non-adoption of Dr. Commet's

January, 2002 work restriction fails for a number of reasons. First, Plaintiff's own March,

2005 testimony stating that he could lift up to 15 pounds stands at odds with the Commet's

findings (Tr. 321). Further, Commet's opinion, issued over three years before the hearing,

does not suggest that the imposed restrictions were permanent or long-term (Tr. 128). EMG

studies performed in February, 2002 on all extremities showed unremarkable results (Tr.

243).    In July, 2002, Dr. Sabbagh opined that Plaintiff's professed limitations were "exaggerated" (Tr. 242).  Two months later, Sabbagh noted that Plaintiff demonstrated full strength in all four extremities (Tr. 236).   In addition to physicians' records suggesting that Plaintiff could lift in excess of five pounds, the Residual Functional Capacity Assessment performed in January, 2003 found that Plaintiff retained the ability to lift 20 pounds occasionally and 10 pounds frequently.   Substantial evidence supports the hypothetical question's inclusion of lifting requirements greater than those set out in January, 2002.

Plaintiff's related argument that the ALJ failed to justify her reason's for rejecting the five-pound restrictions also fails.  The administrative decision cites numerous portion of the record in support of her rejection of Commet's findings.  In the paragraph directly following her discussion of Commet's January, 2002 opinion, she points out that in November, 2001, Plaintiff demonstrated an ability to lift up to 45 pounds (Tr. 17).  While a treating physician's opinion, if uncontradicted, is generally accorded controlling weight,  record evidence rebuts Comment's findings, supporting the conclusion that Plaintiff could perform work at the light exertional level.[3]

Aside from the issue at hand, the administrative decision as a whole is amply

_____

[3]*See Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) ("[I]t is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference")*.*  However, the  deference accorded the treating physician is only appropriate when the examining physician's report is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. 20 C.F.R. § 404.1527(d)(2)**."**

supported by record evidence.  Plaintiff acknowledged that he continued to coach basketball until February of 2005 (Tr. 18).  Although he alleged that his medications' side effect precluded gainful employment, he continued to drive, shop, and perform household chores on a regular basis (Tr. 73-74).  Plaintiff admitted that he continued and visit with family members on a daily basis (Tr. 75).  PT reports from 2001 note the absence of "significant functional limitations," suggesting that Plaintiff exaggerated his limitations in an effort to avoid returning to work (Tr. 173).

This Court notes in closing that its conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize  legitimate impairments caused by Plaintiff's automobile accidents.  However, the overriding question in this appeal is whether the Commissioner's decision was supported by substantial evidence.  Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative level.  Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

-13-

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 20, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 20, 2006.

s/Susan Jefferson
Case Manager